The next case is United States v. Zayas, 182154. May it please the court. My name is Mary Stillinger and I'm here representing Sophia Zayas. This case stems from the tragic death of Ms. Zayas' infant daughter, Annalisa. And I think we see this often that sometimes tragic facts or tragic circumstances lead to poor legal decisions. And I think that's what happened here. Are you appealing the acceptance of the guilty plea or the denial of the motion to withdraw? I thought it was the former, but your adversary seems to think it's the latter. I actually would say it's the latter, Your Honor, because what's unusual about this case is that, well, first, of course, this involves a state statute because it's under the Assimilative Crimes Act. But what's probably unique about this case is that the state Supreme Court, the Supreme Court of New Mexico, entered an opinion after the plea, but before the motion to withdraw the plea, that analyzed or clarified or you could say changed an element of the offense and specifically the intent element of this offense. So I don't know that I could say that the acceptance of the, I mean, there were some issues with the acceptance of the guilty plea in that the defendant, Ms. Zayas, was not advised of the elements of the offense at all, either in the plea agreement or in the plea colloquy. But under an understanding of what the elements were at that time under New Mexico law, I'm not sure if it was wrong or not. Well, that's, yeah, and if you're not sure if it was wrong or not and if plain error applies and if my original reading of your blue brief was correct that you're challenging the acceptance of the guilty plea, then it wouldn't be an obvious error at prong two of plain error, right? Well, leads me to my concession I need to make and I need to apologize to the court because I think I was wrong about the standard on appeal. I said plain error, well, actually I said I think because she gave the court an opportunity to correct it before sentencing that it should not be plain error. But I said in any event, if it is plain error, we're still okay under plain error. So my brief focused on plain error. And actually the government corrected me on that, and I think that they're correct. They set out the correct standard that when you are challenging whether a plea was knowing and voluntary at the time, Bless you. Excuse me. When you're challenging whether a plea is knowing and voluntary, it's a de novo review. Well, it's a de novo review or abuse of discretion, assuming that the challenge has been preserved. And with regard to your challenge under 111G or 11G1A, whatever it is, the explanation of the nature of the charge, I didn't see in the colloquy for the guilty plea, nor did I see in either of the motions to withdraw, an 11G1A argument. So I don't think you, whether it's the acceptance of the guilty plea or the motion to withdraw, I didn't see that challenge ever presented in district court. Well, it was considered later. I don't think it was raised in the initial motion to withdraw the plea. Well, there were sort of three motions to withdraw the plea. There was initially her pro se motion. Then after I was appointed, I came in and filed another motion, and then later filed a motion to reconsider after Ms. Zias' husband had come forward with certain factual admissions. But in any event, there was a point in time when Judge Brack said, in light of the Carrillo decision in this court, we need to now look at whether or not the elements were explained. And he admits, I didn't review the elements with her, and the plea agreement didn't review the elements with her. Well, whatever he did, I mean, did he ever – so you're saying that even if he didn't present an 11G1A argument, that Judge Brack understood that there had been an error under 11G1A? I mean, is that your argument about preservation? Yeah, I mean, yes. I'm sorry. He did raise that, and we did have – he asked us to brief that. It was not raised in my initial motion, but he did ask us to specifically discuss that, and we did. So, yes. In any event, I think the government, correctly, and I'm only going to apologize once more that I think I missed this, but I think they're right that there's a three-part test when you're saying that the plea was not knowing and voluntary because an element was not explained. Generally, to plead guilty, you have to know what you're pleading guilty to, and there's a three-part test that they set out where it's intent, that one, it was intent, a critical element. Two, can the defendant overcome the presumption that the attorneys advised the defendant of that element? And three, can we demonstrate that there was no other notice of that element? The government concedes that first element, that intent is a critical element. And I just have to say here, I know we know this, but in the realm of child abuse, it's kind of unusual because there is child abuse in a civil context, and then there is child abuse in a criminal context. And what is often the difference there is the intent involved, whether it's negligence or whether it ends up getting too reckless and sort of purposeful. So the statute, and this is what the statute says. This is the New Mexico statute. It has sort of two parts to it. What Judge Brack found, he said, well, I didn't, yes, I did not review the elements, and they were not set out in the plea agreement. However, the factual recitation of the plea agreement tracked the statutory language, and therefore, the elements were presented to her. The statute says the defendant knew or should have known that the conduct created a substantial risk of harm or death. So that's the first part. And the second part is the defendant disregarded that risk. And I'm sorry? Consciously. Consciously disregarded the risk in the plea agreement. That's what it says, right? I believe that might be what it said, and I'll check that out, Your Honor. What Judge Brack said is really the second part about disregarding the risk is what the crime is, and that knew or should have known part is just supplemental language. And so I think what the judge was saying is that consciously disregarding a risk implies that you have to know that there is a risk. It implies knowing, not should have knowing, but knowing. Yeah, and I've got the plea agreement that says I disregarded that risk. I'm missing the consciously. Well, I think you may be right, Judge McHugh. I was going to flip to that, but I don't believe it says consciously. Judge Brack ultimately resolved it saying that because there was a disregarding, that implies that you have to know something. You therefore must have known it existed, or how could you disregard it? And I'm reading into his words a little bit there, trying to make sense of what he said. I think that you are, Your Honor, correct about that. It does not use the word conscious, and that may have made a difference. However, I would still say the first part of the statute is confusing. When it says knew or should have known, that is confusing. The judge found that it was not, but you've got the Supreme Court of New Mexico at a time after the plea, a few months after the plea, but before the motions to withdraw are filed. The Supreme Court of New Mexico found that it was confusing. You've got to overcome the presumption that her attorney explained the element to her correctly, right? Yes. What do you rely on to overcome that presumption? What I rely on is her words when the judge said, because the factual background in the plea agreement just really tracks the statutory language and doesn't have any actual facts. It specifies the injuries suffered by the baby, but it did not specify any acts that Ms. Zayas did or observed or anything else. It tracks the statutory language. So the court asked Ms. Zayas, why do you believe that you're guilty? And her statement, which is lengthy, and I think I cited the opening brief. I cited it at page 6 through 7 of the reply brief as well. Paraphrasing it, she says, I should have known. I didn't know. I didn't know about the fractures. I am paraphrasing. The language says I should have known. If I had known, I would have helped my child. If I had known, things would have been different. But the language says that I should have known because I am her parent. So she goes on to say, I should have known because I'm her mommy. She is clearly, when she is asked what makes you guilty, she is clearly misstating and not understanding the proper legal standard for that element. Why I believe her lawyers didn't advise her of that, because nobody said anything about it. Nobody corrected it at the time of the plea. Nobody said, well, wait a minute. She's not actually admitting it. But I'm not sure that they could have because the decision in consul had not come out. That's the New Mexico Supreme Court case that clarified the child abuse statute. That had not come out yet. So I'm not sure that her lawyers understood, or the court, or the prosecutor for that matter, at that point in time. Consul talks about the child abuse statute in New Mexico. And it's interesting because it talks about a prior case, Santillanes. And before Santillanes, they said child abuse in New Mexico statute was really like strict liability. Then Santillanes came along, I think, in the early 1990s and said, no, there's got to be some mental element here. There's got to be some negligence here, at least. And they talked about criminal negligence. And then consul said, oh, we've got to have more than negligence. And so the standard was evolving. And that's why I think we overcome that presumption. Because how could her attorneys have known that for sure? It was not even clearly established in New Mexico law, Your Honor. In Judge Brack's final order denying the motion, I say final order because he denied it orally when she made her pro se motion. He denied my motion and we refiled. His final order, he even notes that Ms. Zayas in her statements, this is a quote, says she seemed to stop short at admitting negligence. So that's what he understood she was doing. Were there any other documents that, any other ways that she would have received notice that it was a recklessness standard? No, there were not. I mean, the government suggests that the information... No, the information tracks that exact same language, Your Honor. In fact, the information just charges negligence, the account three just charges negligence and without justifiable cause, right? Yeah, yes, I'm sorry. It's also these documents were all created, and I know I'm not arguing a lack of voluntariness because of the rush or because of the level of emotion, but I do think it's something... These are red flags that were raised and Judge Brack addresses them at the plea colloquy. She was getting ready to go to trial on a murder charge and over the weekend, new evidence had come to light or I guess it was the Friday before this Monday hearing. A second forensic examiner had gone to Albuquerque Defense Council. The Assistant U.S. Attorney had met with a second forensic examiner and they had found new facts that caused the government to make this plea offer on Monday morning. So she's in court Monday morning for a motions hearing. She's set for trial in about two weeks and the government makes an offer to her. So she is looking at these documents for the first time that Monday morning, looking at the information, looking at the plea agreement, and she does have some hours. And so I'm again saying I think it's based on the fact that the elements were not explained to her. She made no omissions. And the bottom line is, well, I guess something else that's important is that in a lot of cases, there are acts from which you could infer intent. You know, hit the child on the head with a hammer. You don't need a statement of intent. You can infer intent from that. There are no acts alleged. The judge even says at sentencing, we'll never know what happened to this child or at whose hands. This is not a technicality. She admitted no criminal conduct and the government showed no criminal conduct. And I'd like to reserve my remaining time for rebuttal, please. Thank you. Welcome back. Thank you. May it please the court, good morning again. Jennifer Rizzoni on behalf of the United States. Your Honors, I think that the issue in this case is extremely narrow, and it's whether or not the plea in this case was knowing and voluntary. We do review that de novo, though the actual motion to withdraw is reviewed for an abuse of discretion. There was not only a knowing and voluntary constitutional challenge, but a challenge under 11G1A that Judge Brack failed to explain the nature of the charge. Am I incorrect about that? We did not read it that way, Your Honor. So we addressed only whether the plea was knowing and voluntary, which Brack made. And the argument is it's not knowing and voluntary because she didn't understand what she was pleading to. So they're kind of related, right? They are, Your Honor. They are. But we did use the Allen v. Mullen standard, the three-part test that counsel just laid out for you. And we do admit that intent was a critical element here. We would never deny that. And am I right that the count that she pleaded guilty to was count three that specifically charged with regard to the mens rea that she acted negligently and without justifiable cause? Information does absolutely state that, Your Honor. And so what she pleaded guilty to and what Judge Brack declined to allow withdrawal of the guilty plea was that she conceded that she had committed something, the charge that was not actually a crime. It's not actually a crime to act negligently and without justifiable cause, correct? Your Honor, it is. No, that because of consult. It is not a crime to have the mens rea of negligence under that statute. You are correct. You have to have a reckless disregard is the mens rea that's required for you to commit a crime. How can we affirm it? Your Honor, we would submit to you that in this case both mens rea were contained in the statement of facts or the defendant's admission of facts, I should say, that the only part of it... How can you say that she pled to what is now recklessness if you look at the jury instruction for recklessness when she said, I should have known, I didn't know. I should have known, which is negligence. I agree with you. Recklessness. I apologize for interrupting, Your Honor. Go ahead. The should have known is the negligence standard. But I would ask you to look very carefully at her words. What she's saying that she should have known about are the injuries, and that's not what she was pleading to. She was pleading to putting her daughter in a situation that resulted in those injuries. And so I would ask the court to... Well, if she didn't know about the injuries, how could she know that the situation would create the injuries? Well, there's more to this case, but the fact that there appears to have been her husband who inflicted these injuries, that's kind of replete throughout the record below. And so what she knew was that her husband was potentially doing this to her child, not the injuries themselves. She didn't say that, and we know she was an incredible alcoholic, drank herself to where she couldn't understand anything during this time period. So... So how do we... Say that again. I apologize. What is the question? So how do we know... The facts here are, to me, are so difficult. I mean, she was home with the child the day the child died, but her husband was also there for the two hours prior to the child's death. He was, Your Honor. No indication she wasn't passed out from being drunk. They found a carton full of liquor bottles there. Your Honor, I would ask you to be sure to read through her allocation carefully and look for what I just explained in terms of what she was actually saying. Point us specifically, because I've looked at it repeatedly. I have it right in front of me now. So point to the exact words that you think indicate that she admitted to consciously disregarding a known risk. Well, here's the thing. In that allocation, or her statement to the court, I'm not sure she did, but that's not necessarily the standard that we're looking at. What we're looking at is whether or not her... Whether they can overcome the presumption that her attorneys told her that it was both a negligence and a reckless disregard standard. How can we know that when the attorneys haven't said that? At the time they counseled her, negligence was sufficient. Your Honor, in the plea agreement itself, the language for negligence and the language for reckless disregard were both included. But wasn't that language straight out of the exact language that Consall said was too confusing? In other words, the language in the plea agreement for the factual basis was drawn from the uniform jury instruction, and Consall said, that's a bunch of baloney. It makes no sense. We're not going to even allow that language anymore, and you're relying on that precise language to say that she knew what she was... that the information doesn't really mean negligence. So Consall was most concerned with the should-have-known language. I think that's clear. But what Consall also says is that when a person says, I disregarded that risk, essentially that's the reckless disregard language. Reckless disregard means you have to disregard a known risk, and there's nothing in the plea agreement that ever has her admitting that she knew. It doesn't say, I knew and should have known. It says, I knew or should have known. So she's pleading to the lowest intent there. But she's also saying, I disregarded that risk as if... That risk. I disregarded that risk. That risk I should have known. And we would read it the other way, Your Honor, but yes, I understand what you're saying. Well, I mean, you know, it's not a game. I mean, this is somebody's life, and the court has ruled that the very language in this plea agreement is so confusing no one can understand it, and it doesn't adequately notify people that they're dealing with a recklessness standard. Your Honor, just to be absolutely clear, the government nor do I think of this as a game or Ms. Zise's life as a game or something that we are playing with here as we stand here. To that end, we made the argument that both standards, both mens rea, are contained in the plea agreement. We made the argument that they have not been able to overcome the presumption that her attorneys explained to her both standards. Why is it the presumption rebutted by the New Mexico Supreme Court's case that the law was totally unclear? Because the government is making the presumption that both standards are contained in the plea agreement, and therefore they were both explained. Couldn't, I mean, wouldn't we look at the information that doesn't even pretend to include a reckless standard and that the plea agreement was a plea to the crime charged in that information? Your Honor, I cannot deny that it says negligence in the information at all, but we stand by our argument that both mens rea are contained in the plea agreement, and therefore she was informed of the mens rea that was required in this case. I started this by saying this is a very narrow issue. It's going to be up to the court to decide whether or not she was adequately informed and made a knowing and voluntary plea in this case. We would ask you to analyze our argument as well as the defendant's and make the decision that's most appropriate. Thank you. Thank you. I know I have just a few moments left, but I did want to mention just factually because it came up that her husband also spent time with this baby. It's also in the record her grandmother was with her whenever she was at home with the baby during the days or weeks leading up to Annalisa's death. So I wanted to make that clear also. She did drink herself into oblivion, and if she were the sole caretaker of that child, maybe that would be sufficient because obviously that would not be living up to a standard, but she wasn't. I also wanted to mention something I told the district court, which is I think her statements, Ms. Zias' statements, I should have known, I should have known, they do have to also be tempered by the fact she's a mother. And every parent, when something bad happens to your child, that is a natural reaction. I should have known. I'm her mother, and that's exactly what she says. I should have known. It's very different than I'm responsible for somebody, a co-worker, somebody else, and I should have known about that risk. This is a parent, and I think factually that has to play into what her state of mind was. I think if anything, Ms. Zias was accepting more responsibility than actually should have fallen upon her for this because she felt that responsibility. I don't know if the court has any other questions. Thank you very much. Thank you. This matter will be submitted. Thank you, counsel, to both sides for your excellent written and oral advocacy.